UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMES K. SHELTON, BEN SHELTON III, and SAMI SAAD,<br><br>Plaintiffs,<br><br>v.<br><br>LIQUOR AND CANNABIS BOARD OF THE STATE OF WASHINGTON, et al.,<br><br>Defendants. | CASE NO. C22-5135 BHS<br><br>ORDER |

Plaintiffs Sami Saad, Ben Shelton III, and James K. Shelton assert that Defendants Rick Garza, Steve Hobbs, Washington Liquor and Cannabis Board ("LCB"), and City of Seattle ("City") deprived them of their ability to participate in Washington's legal cannabis market after Washington combined its medicinal and recreational markets. Plaintiffs owned medicinal cannabis stores in Washington prior to the consolidation. They did not seek licenses under the new scheme, allegedly because LCB agents, acting as peace officers, threatened them to leave their businesses. Plaintiffs are Black, and they allege that the majority (or "all") of the remaining cannabis store owners in Seattle are

ORDER - 1

white.[1] They therefore assert that Defendants violated their constitutional and statutory rights by denying their participation in the consolidated cannabis market in Washington. Defendants move to dismiss all claims against them.

## I. BACKGROUND

**A.    History of Washington Cannabis Law**

Before Washington became one of the first states to legalize recreational cannabis in 2012, Washington legalized cannabis for medicinal purposes in 1998. The ballot initiative that legalized medical cannabis, Initiative 692, did not legalize dispensaries, however. Nine years later, Senate Bill 6032 altered the law, allowing a "designated provider," rather than a "primary caregiver," to supply a patient with medical cannabis. Under SB 6032:

> "Designated provider" means a person who:
> (a) Is eighteen years of age or older;
> (b) Has been designated in writing by a patient to serve as a designated provider under this chapter;
> (c) Is prohibited from consuming marijuana obtained for the personal, medical use of the patient for whom the individual is acting as designated provider; and
> (d) Is the designated provider to only one patient at any time.

While SB 6032 did not legalize dispensaries, it created a legal loophole and dispensaries began operating as purported "designated providers." While it remains unclear whether

---

[1] While Plaintiffs provide no citation for this claim, it was true in 2020 that there were no majority Black-owned cannabis stores in Seattle. Tony Black, *Why There's No Majority Black-Owned Marijuana Shops in Seattle*, King 5 (Oct. 30, 2020, 8:45 AM), https://www.king5.com/article/news/local/push-to-diversify-the-marijuana-industry-in-seattle/281-be5174e2-92a7-464f-8e1d-8374b8c63861

dispensaries would have actually qualified under the definition, the State largely ignored the operations.

The Washington legislature attempted to regulate medical cannabis dispensaries in 2011 with Senate Bill 5073. Although the bill passed in both the House and Senate, the Governor vetoed the parts of the bill that would have implemented registration and licensing requirements, raising her concern that such a regulatory regime would make state regulatory employees vulnerable to federal prosecution. The partial veto left dispensaries in the same place they had been previously: operating in a legal gray area without licensing and registration requirements.

In 2012, Washington became one of the first two states to legalize recreational cannabis with Initiative 502. Unlike the medical cannabis market, recreational cannabis was governed by an extensive regulatory and licensing regime from the point of legalization. Washington established the LCB, which was responsible for tracking, licensing, and regulating recreational cannabis businesses. The first recreational cannabis stores in Washington opened in 2014.

In 2016, Washington enacted Senate Bill 5052, which consolidated the previously unregulated medical and regulated recreational cannabis markets and placed both markets under LCB regulation. This meant that, for the first time, one needed an LCB-issued license to sell medical cannabis. All unlicensed medical dispensaries were required to close by July 2016. The bill also eliminated community gardens, but allowed very limited "cooperative gardens." Those with experience in the industry were supposed to have been given priority when applying for an LCB license. However, there were only a limited

number of licenses available, which did not cover the large number of shuttered dispensaries.[2]

**B.     Facts and Procedural History**

Plaintiffs James K. Shelton, Ben Shelton III, and Sami Saad were all participants in the medical cannabis market. Saad owned and operated the medical dispensary "12 Green LLC" located near the Greenwood neighborhood in Seattle, at 323 North 105th Street. Dkt. 1-1, ¶ 1. Saad alleges that LCB agents pressured him out of business by posing as peace officers and telling him: "You guys aren't going to get your (City) business licenses renewed." *Id.* ¶ 4. Saad interpreted that statement to mean that Black medical cannabis business owners would not receive LCB approval to operate cannabis businesses. *Id.* ¶ 6. It is not clear from the face of the complaint when Saad closed his dispensary, but there is no suggestion that he continued to operate without an LCB license after June 2016.

The Sheltons owned and operated the medical dispensary "Lifetree Inc." in unincorporated King County, at 12409 Renton Avenue South. Dkt. 1-1, ¶ 10. The Sheltons converted that dispensary into a community garden in 2016. *Id.* ¶ 11. Similar to Saad, the Sheltons allege that LCB agents pressured them out of business by visiting their place of business posed as peace officers and telling them that they had to cease

---

[2] *See generally* Christopher Cambron, et al., *State and National Contexts in Evaluating Cannabis Laws: A Case Study of Washington State* (2017), https://pubmed.ncbi.nlm.nih.gov/28458396/

ORDER - 4

operations. *Id.* ¶ 12. The Sheltons closed their business on or around June 20, 2016 after receiving a cease-and-desist letter from LCB. *Id.* ¶ 13.

In February 2022, Plaintiffs sued LCB, Director of LCB Rick Garza, the City of Seattle, and Washington Secretary of State Steve Hobbs in Thurston County Superior Court. Dkt. 1-1. The complaint asserted ten causes of action: (1) Declaratory Judgment; (2) Tortious Interference; (3) Leading Organized Crime; (4) Criminal Impersonation in the First Degree; (5) Criminal Impersonation in the Second Degree; (6) Unconstitutional Fifth Amendment Taking; (7) 42 U.S.C. § 1981 Right to Contract; (8) 42 U.S.C. § 1983 Constitutional Deprivation Under Color of Law; (9) 42 U.S.C. § 1985 Conspiratorial Alliance; and (10) Unconstitutional Fifth Amendment Taking. *Id.* ¶¶ 25–37. Plaintiffs sought declaratory judgments that Plaintiffs were not required to surrender their licenses prior to July 2022. *Id.* at 15. They also sought a declaratory judgment that they were subject to unlawful tortious interference, a declaratory judgment that they were subject to unlawful criminal racketeering, injunctive relief, compensatory damages, net profits from 2016 to now, treble damages, and costs. *Id.*

The City removed the case to this Court. Dkt. 1. Shortly after removal, all four defendants moved to dismiss the case in two motions: one filed by the City, Dkt. 7, and one filed by the three other defendants ("State Defendants"), Dkt. 6. All Defendants assert many of the same arguments for dismissal, including that all of Plaintiffs' civil claims are barred by the limitations period and that the three criminal claims are barred because they do not have a civil cause of action. The motions also assert that Plaintiffs' claims do not meet the minimum pleading standards. Garza, who was sued in both his

individual and official capacities, also argues he is entitled to qualified immunity. Dkt. 6 at 15–16.

Plaintiffs filed a joint response to the two motions to dismiss, arguing, among other things, that the discovery rule should apply to extend the accrual date of the limitations period. Dkt. 13. They also submitted various exhibits with their response to support their assertion that the LCB's licensing regime is racist and has had a disparate impact. *Id.*[3] Defendants also move to stay discovery pending the resolution of the instant dispositive motions, Dkt. 25, and Plaintiffs oppose that request,[4] Dkt. 27.

## II.  DISCUSSION

It is worth noting at the outset that Plaintiffs seem to primarily take issue with the manner in which the medical cannabis market was folded into the recreational market and placed under LCB's control. While it is possible that the State's consolidation of the cannabis market was flawed, that does not necessarily indicate a violation of Plaintiffs' rights. Moreover, Plaintiffs do not challenge the regulatory scheme as a whole through

---

[3] Plaintiffs also filed a surreply in which they moved to strike "any and all portions of Defendants' Reply Memoranda going towards a Statute of Limitations Defense . . . as clearly inconceivable." Dkt. 20 at 2. A motion to strike is not an avenue to dispute a properly asserted defense. Therefore, Plaintiffs' Motion to Strike, Dkt. 20, is DENIED.

[4] Plaintiffs also filed a Notice of Supplemental Authority, Dkt. 35. "Before the court rules on a pending motion, a party may bring to the court's attention *relevant authority* issued after the date the party's last brief was filed by serving and filing a Notice of Supplemental Authority that attaches the supplemental authority *without argument*." LCR 7(n) (emphasis added). Plaintiffs' Supplemental Authority advances arguments and includes various documents, including text messages, photographs, emails, and articles. It does not contain any relevant legal authority and it improperly includes argument. The filing is therefore STRICKEN.

something like an Equal Protection Clause lawsuit.[5] Rather, they raise various causes of action in an attempt to argue that Defendants conducted and participated in a grand conspiracy to deprive them of licenses to sell cannabis. Plaintiffs' claims are implausible as pled, exceed the limitations period, and otherwise fail for reasons explained below.

**A.     Motion to Dismiss Standard**

Dismissal under Federal Rule of Civil Procedure 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Although the Court must accept as true the complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the

---

[5] It is also unclear that Plaintiffs would have standing to raise such a challenge. While Plaintiffs generally allege that the State's licensing regime had a disparate impact on Black cannabis distributers and other distributers of color, it is undisputed that Plaintiffs never applied for an I-502 license.

speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

**B.      Limitations Period**

Defendants argue that most, if not all, of Plaintiffs' claims are barred by their respective statutes of limitations. Plaintiffs argue that under Washington's discovery rule, the limitations periods did not begin to run until they discovered that LCB agents are not peace officers and do not have police power.

While each claim's limitations period will be discussed separately below, the relevant limitations period for most of the claims in this case is three years. RCW 4.16.080(2). "Generally, the statute of limitations begins to run at the time the act or omission causing the tort injury occurs." *Ohnemus v. Washington*, 195 Wn. App. 135, 143 (2016) (internal quotation omitted). Certain causes of actions, however, do not accrue until the complaining party "discovers" the basis for the cause of action.

"Under Washington's [common law] discovery rule, a cause of action does not accrue until a party knows or reasonably should have known the essential elements of the possible cause of action." *Clare v. Saberhagen Holdings, Inc.*, 129 Wn. App. 599, 602 (2005). The plaintiff is required to exercise reasonable diligence in pursuing a claim, and if the plaintiff "is placed on notice by some appreciable harm occasioned by another's wrongful conduct, the plaintiff must make further diligence inquiry to ascertain the scope of the actual harm." *Green v. A.P.C. (Am. Pharm. Co.)*, 136 Wn.2d 87, 96 (1998) (en

banc). The plaintiff does not have to be on notice that the relevant facts are sufficient to establish a cause of action. *Ohnemus*, 195 Wn. App. at 143. Whether the plaintiff exercised due diligence is normally a factual question, "but can be determined as a matter of law when reasonable minds could reach only one conclusion." *Id.* (citation omitted).

Plaintiffs ceased operations in 2016. Therefore, unless the discovery rule or some other tolling provision applies, Plaintiffs' claims would be barred by the of limitations period. While the discovery rule typically raises factual questions that cannot be decided on a motion to dismiss, it is unclear how, even if Plaintiffs' claims are true, the discovery rule would extend the limitations period in this case.

Plaintiffs seem to argue that had they known that LCB agents were not peace officers and did not have police power, they would not have ceased their operations. It is unclear how this would have made any difference. As explained in the State Defendants' Reply, LCB officers are "[l]imited authority Washington peace officer[s]" under RCW § 10.93.020(6), which provides the officers with the power "to detect or apprehend violators of the laws in some or all of the limited subject areas for which [the LCB] is responsible." See Dkt. 17 at 5. Plaintiffs did not possess licenses to sell cannabis, in 2016 or ever. LCB was the licensing authority for cannabis businesses in Washington and was certainly authorized to inform Plaintiffs that they needed to obtain a license or cease operations. Plaintiffs' "discovery" that LCB agents were not general authority peace officers is irrelevant and cannot be a justification for applying the discovery rule.

While pro se plaintiffs' briefing is held "to less stringent standards," *Haines v. Kerner*, 404 U.S. 519, 520, the complaint still must comply with the plausibility standard

laid out in *Twombly* and *Iqbal*. Plaintiffs' complaint does not meet that standard and many of their claims fail for other reasons as well. Each claim is discussed in turn.

**C.    Declaratory Judgment**

Plaintiffs ask the Court to issue a directive that would "retroactively issue the same class of Business licenses that [Plaintiffs] lawfully held in the first place before the fake police at WSLCB threatened them out of business" pursuant to RCW 7.24. Dkt. 1-1, ¶ 27. The State Defendants argue that this claim seeks a type of relief the Court cannot grant. Dkt. 6 at 8. Specifically, the State avers that medical-specific marijuana licenses do not exist in Washington and that Plaintiffs have not applied for, and cannot currently apply for, a marijuana retail license. *Id.* at 9. Further, the State Defendants argue that LCB is the only entity empowered to grant cannabis licenses in Washington. *Id.*

The City argues that Washington's Uniform Declaratory Judgments Act ("UDJA") does not apply because Plaintiffs did not identify a statute or contract under which their rights were violated. Dkt. 7 at 16–18. The City also argues that Plaintiffs' argument that they would have been "grandfathered in" to Washington's cannabis market is factually inaccurate because no such grandfather clause exists for medical marijuana license holders. *Id.* at 19. Further, the City argues that the Court cannot grant this type of relief because it would effectively be "sanction[ing] conduct the Legislature, and Congress, has chosen to criminalize." *Id.*

Under the UDJA:

> A person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have

determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

RCW 7.24.020. The UDJA "is designed to settle and afford relief from insecurity and uncertainty with respect to rights, status, and other legal relations." *DiNino v. State*, 102 Wn.2d 327, 330 (1984).

As an initial matter, the Court cannot "retroactively issue the same class of Business licenses that [Plaintiffs] lawfully held in the first place." Dkt. 1-1 at 11. It is unclear whether by "business licenses" Plaintiffs are referring to regular business licenses or licenses to sell cannabis. To the extent it is the former, Plaintiffs voluntarily allowed their business licenses to lapse; the legislation that consolidated Washington's cannabis market did not revoke those licenses. To the extent it is the latter, those types of cannabis licenses—medicinal, not recreational—do not exist, and have never existed, in Washington.

Further, cannabis remains federally illegal. *See* 21 U.S.C. § 812. As an arm of the federal government, this Court cannot order activity that remains federally illegal. *Cf. Polk v. Gontmakher*, No. 18-cv-1434 RAJ, 2020 WL 2572536, at *2 (W.D. Wash. May 21, 2020) ("The Court cannot fathom how ordering Defendants to turn over the future profits of a marijuana business would not require them to violate the [Controlled Substances Act]. And as this Court has previously explained to [Plaintiff], it cannot award him an equitable interest in [a marijuana business] because to do so would directly contravene federal law."). To the extent Plaintiffs want to return to their previous status

as holders of business licenses to qualify for the alleged "grandfather clause," that clause does not appear to exist.

Therefore, Defendants' motions to dismiss Plaintiffs' Delcaratory Judgment claim (claim 1) are GRANTED. That claim is DISMISSED with prejudice.

**D.     Tortious Interference**

Plaintiffs allege that Defendants tortiously interfered with their ability "to enjoy the benefits of their lawfully-held licenses." Dkt. 1-1, ¶ 30.

To successfully assert a tortious interference claim, the plaintiff must show

> (1) the existence of a valid contractual relationship or business expectancy; (2) the defendant's knowledge of and intentional interference with that relationship or expectancy; (3) a breach or termination of that relationship or expectancy induced or caused by the interference; (4) an improper purpose or the use of improper means by the defendant that caused the interference; and (5) resultant damage.

*Janaszak v. State*, 173 Wn. App. 703, 727 (2013). The limitations period for a tortious interference claim in Washington is three years. RCW 4.16.080(2); *City of Seattle v. Blume*, 134 Wn.2d 243, 251 (1997).

Preliminarily, Plaintiffs' tortious interference claim is time-barred; the three-year limitations period accrued in 2016 and therefore ran in 2019. Further, Plaintiffs' pleading is unclear and fails to state a plausible claim. It is not clear to the Court whether Plaintiffs intended to assert that Defendants interfered with their contract (in the form of a license) with the State, that Defendants interfered with existing contracts with customers and suppliers, or that Defendants interfered with prospective contractual and business relationships.

To the extent Plaintiffs are challenging LCB (a State agency) and State agents' interference with Plaintiffs' contractual relationship with the State, such a claim fails on its face. Plaintiffs never possessed a license to sell cannabis and were doing so under a loophole in the law. It was never established that medical cannabis dispensaries ever operated legally to begin with. Moreover, a party cannot tortiously interfere with a contract to which it is a party. *Vasquez v. State, Dep't of Social & Health Servs.*, 94 Wn. App. 976, 989 (1999).

To the extent Plaintiffs are challenging Defendants' interference with their contractual relationships with either existing customers and suppliers or reasonably likely prospective business opportunities, that claim also fails. Again, insofar as the Court is concerned, Plaintiffs' operations were not legal to begin with. They were never licensed to sell cannabis in the State. One cannot have a valid business expectancy resulting from unlawful activity. *See BOFI Fed. Bank v. Advance Funding LLC*, 105 F. Supp. 3d 1215, 1220 (W.D. Wash. 2015); *see also Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*, 745 F.3d 343, 349 (9th Cir. 2014).

Therefore, Defendants' motions to dismiss Plaintiff's Tortious Interference claim (claim 2) are GRANTED. That claim is DISMISSED with prejudice.

**E.      Criminal Claims**

Plaintiffs allege that Defendants committed the Washington crimes of Leading Organized Crime, Criminal Impersonation in the First Degree, and Criminal Impersonation in the Second Degree. Dkt. 1-1 at 11–12. Defendants correctly point out that these statutes do not have civil causes of action. Dkt. 7 at 24; Dkt. 6 at 11.

Certain crimes that are part of criminal profiteering activity, including Leading Organized Crime, can be asserted in civil lawsuits under Washington's Criminal Profiteering Act ("CPA"). See RCW 9A.82.100(1)(a) ("A person who sustains injury . . . by an act of criminal profiteering that is part of a pattern of criminal profiteering activity, or by [Leading Organized Crime as defined in RCW 9A.82.060] may file an action . . . for the recovery of damages."). Plaintiffs do not assert a CPA cause of action and do not state a plausible claim that Defendants engaged in any criminal profiteering activity. Moreover, the CPA has a three-year limitations period and thus any such claim would be time-barred. RCW 9A.82.100(7).

Therefore, Defendants' motions to dismiss Plaintiff's Leading Organized Crime and Criminal Impersonation claims (claims 3, 4, and 5) are GRANTED. Those claims are DISMISSED with prejudice.

### F. Fifth Amendment Taking

Plaintiffs allege that Defendants executed an unlawful taking under the Fifth Amendment of the United States Constitution by depriving them of their ability to operate their cannabis stores. Dkt. 1-1, ¶ 34. Plaintiffs' tenth cause of action also asserts an unconstitutional Fifth Amendment Taking, *id.* ¶ 37, but it is unclear how this claim is any different from Plaintiffs' other Takings Clause claim.

While Plaintiffs did not assert a cause of action for their Takings Clause claims, "Takings claims must be brought under § 1983." *Hacienda Valley Mobile Ests. v. City of Morgan Hill*, 353 F.3d 651, 655 (9th Cir. 2003). The federal courts are "to liberally construe the inartful pleading of pro se litigants," *Eldridge v. Block*, 832 F.2d 1132, 1137

(9th Cir. 1987) (internal quotation omitted), and the Court will therefore interpret Plaintiffs' Takings Clause claims as being asserted under 42 U.S.C. § 1983.

"It is well-established that claims brought under § 1983 borrow the forum state's statute of limitations for personal injury claims." *Action Apartment Ass'n Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026–27 (9th Cir. 2007). In Washington, that limitations period is three years. *See* RCW 4.16.080(2). As previously explained, any potential claims Plaintiffs have accrued in 2016 and the limitations period for any Takings Clause claims therefore ran in 2019. Those claims are time-barred.

The Fifth Amendment Takings Clause prohibits "private property" from being "taken for public use, without just compensation." U.S. Const. amend. V. A classic taking occurs when the "government directly appropriates private property or ousts the owner from his domain." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005). Beyond a classic taking, the Supreme Court has held that "if regulation goes too far it will be recognized as a taking." *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). There are three types of regulatory actions "that are functionally equivalent to the classic taking," *Lingle*, 544 U.S. at 539, reflected in the Supreme Court's decisions in *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982), *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992), and *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978).

Plaintiffs' Takings Clause claims are unclear and do not sufficiently state a claim. The Court's best read of the complaint is that Plaintiffs intended to argue that Defendants executed an unconstitutional taking when LCB agents posed as peace officers, went to

1 their cannabis businesses, and ousted them by telling them their licenses would not be
2 renewed. That argument fails. Plaintiffs were operating medical cannabis dispensaries
3 that arguably were not legal to begin with. Defendants did not take any property from
4 Plaintiffs, and Plaintiffs did not have a protectable property interest. While LCB did order
5 Plaintiffs to cease their operations, they were justified in doing so. Plaintiffs' businesses
6 were unlicensed, and Plaintiffs failed to apply for LCB licenses.

Therefore, Defendants' motions to dismiss Plaintiff's Takings Clause claims (claims 6 and 10) are GRANTED. Those claims are DISMISSED with prejudice.

**G.  Right to Contract**

Plaintiffs allege that LCB deprived them of "having the same opportunity to contract as white persons in the industry." Dkt. 1-1, ¶ 35. Again, Plaintiffs fail to state a plausible claim, or even explain the substance of their claim. Plaintiffs never applied for a license to legally sell cannabis. LCB therefore never had the opportunity to deny them a license or the right to contract.

Therefore, Defendants' motions to dismiss Plaintiff's Right to Contract claim (claim 7) are GRANTED. That claim is DISMISSED with prejudice.

**H.  § 1983**

Plaintiffs' complaint alleges a general 42 U.S.C. § 1983 claim, but no such claim is cognizable. "One cannot go into court and claim a violation of § 1983—for § 1983 by itself does not protect anyone against anything." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) (quoting *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979)). It does not create any substantive rights. *Id.* at 284–85. § 1983 is instead merely

a vehicle for enforcing individual rights secured elsewhere, most typically in the United States Constitution. *Id.*

It is not clear what substantive rights claims Plaintiffs are asserting via § 1983. To state a plausible § 1983 claim, Plaintiffs would need to clearly state what constitutional or legal rights Defendants violated. Further, any potential § 1983 claim, like Plaintiffs' Takings Clause claims, is nonetheless barred by the limitations period.

Therefore, Defendants' motions to dismiss Plaintiff's Constitutional Deprivation Under Color of Law claim (claim 8) are GRANTED. That claim is DISMISSED with prejudice.

I.   **§ 1985 Conspiratorial Alliance**

Plaintiffs allege that "[t]he City and WSLCB worked together in a [c]onspiratorial alliance to foment and to engage this entire scheme." Dkt. 1-1, ¶ 36.

A civil rights conspiracy claim requires proof of four elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters & Joinders of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 828–29 (1983).

Plaintiffs allege that the City and LCB engaged in a conspiracy "to foment and to engage in" the "scheme" detailed throughout their complaint. Dkt. 1-1 at 14. Again, this claim is unclear. To the extent Plaintiffs allege that the City and LCB conspired to

deprive them of their licenses to sell cannabis, that claim is implausible. The City and LCB followed new legislation which consolidated the medicinal and recreational cannabis markets in Washington and required licenses to sell any type of cannabis. Plaintiffs did not seek to acquire a license under the new scheme. It is unclear what LCB and the City allegedly did to conspire against Plaintiffs.

Further, any potential § 1985 claim is again barred by the limitations period. Actions brought pursuant to 42 U.S.C. § 1985 are governed by the forum state's statute of limitations for personal injury actions. *Taylor v. Regents of Univ. of Calif.*, 993 F.2d 710, 711–12 (9th Cir. 1993). As already stated, in Washington, that limitations period is three years. RCW 4.16.080(2). Plaintiffs' potential § 1985 claims expired in 2019.

Therefore, Defendants' motions to dismiss Plaintiff's Conspiratorial Alliance claim (claim 9) are GRANTED. That claim is DISMISSED with prejudice.

**J.     Leave to Amend**

On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988). Pro se plaintiffs are ultimately held "to less stringent standards than formal pleadings drafted by lawyers." *Haines*, 404 U.S. at 520.

1  Leave to amend in this case would be futile. All of Plaintiffs' claims are either
2  time-barred or lack a private cause of action. The Court will therefore not grant Plaintiffs
3  leave to amend.

### III.  ORDER

Therefore, it is hereby **ORDERED** that Defendants Rick Garza, Steve Hobbs, and Washington Liquor and Cannabis Board's Motion to Dismiss, Dkt. 6, and Defendant City of Seattle's Motion to Dismiss, Dkt. 7, are **GRANTED**. Plaintiffs Sami Saad, Ben Shelton III, and James K. Shelton's Motion to Strike, Dkt. 20, is **DENIED**, and Defendants' Motion to Stay Discovery, Dkt. 25, is **DENIED as moot**.

The Clerk shall enter a JUDGMENT and close the case.

Dated this 8th day of July, 2022.

BENJAMIN H. SETTLE
United States District Judge